**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| BRUCE ARNOLD,<br><br>                             Plaintiff,<br>   v.<br><br>IRIS PROPERTIES, INC.,<br><br>                            Defendants. | Case No:<br><br>**JURY DEMAND** |

## VERIFIED COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES

Plaintiff Bruce Arnold ("Arnold" or "Plaintiff") alleges for its Verified Complaint against Defendant Iris Properties, Inc. ("Iris" or "Defendant"), as follows:

## NATURE OF THE ACTION

1.      Bruce Arnold is a founding member, singer and songwriter of the seminal soft rock band, ORPHEUS.

2.      This action relates to numerous wrongful acts committed by Defendant in failing to properly account and pay Plaintiff for income it has received, and continues to receive, as required under the contracts between the parties in violation of the express terms of the contracts. Specifically, Plaintiff and Defendant are parties to a 1967 Artist Recording Agreement ("Recording Agreement") and numerous Songwriter Agreements ("Songwriter Agreements")(collectively "Agreements").

3.      Defendant has willfully refused to pay monies and make accountings due and owing to Plaintiff, including those in connection with the commercial exploitation and licensing of the recordings or records at issue, has failed to pay mechanical royalties for the musical compositions and other rights pursuant to the Songwriter Agreements, has improperly attempted

1

to trademark the name ORPHEUS in violation and breach of the Recording Agreement and 1967 Rider Agreement between the parties and in violation of Plaintiff's common law trademark rights to the name ORPHEUS, and has committed fraudulent acts causing damages to Plaintiff.

4.      Plaintiff has duly complied with all of its obligations under the Recording Agreement and Songwriter Agreements.

5.      Plaintiff seeks compensatory damages, injunctive relief and declaratory relief as further set out herein, including, but not limited to a declaration that Plaintiff is the rightful owner of the band name "ORPHEUS".

## THE PARTIES

6.      Plaintiff Bruce Arnold, is citizen of the state of California who currently resides at 1422 Buchanan St, Novato, CA 94947.

7.      Defendant Iris Properties, Inc. is the successor in interest to Alan Lorber Productions, Inc. and Interval Music and is a domestic corporation with its principal place of business at 414 East 52nd Street, New York, New York, 10022.  Defendant is owned and controlled by Alan Lorber.  Defendant can be served through its registered agent, the Law Offices of Christopher Whent, 270 Madison Ave., Suite 1410, New York, New York, 10016.

## JURISDICTION AND VENUE

8.      The Court has personal jurisdiction over Defendant because it is a New York Corporation with its principal place of business in Manhattan, New York.

9.      The Court has both original and diversity jurisdiction over the claims asserted herein.

10.      The Court has subject matter jurisdiction over the claim asserted herein pursuant to 28 U.S.C. § 1332 because Plaintiff is a citizen of the State of California and Defendant is a Citizen

of the State of New York and the amount in controversy exceeds $75,000.00

11.     Venue is proper in the Southern District of New York pursuant to 28 U.S.C. §§ 1391(b)(1) and (2) because Defendant is a resident of New York and a substantial part of the events giving rise to Plaintiff's claims occurred within this District.

## FACTUAL BACKGROUND

### The Recording Agreement

12.     On or about September 19, 1967, Plaintiff and Alan Lorber Productions, Inc., the predecessor company to Defendant Iris Properties, entered into the Recording Agreement.  A copy of the Recording Agreement is attached hereto as **Exhibit A**.

13.     Pursuant to Paragraph 6 of the Recording Agreement, Defendant was required to "pay to the Artist for the rights granted herein, and for the services rendered hereunder" certain royalties related to the commercial exploitation of any of the recordings covered by the Recording Agreement.   A list of the sound recordings at issue subject to the Recording Agreement are attached hereto as **Exhibit B**.

14.     The Recording Agreement was duly signed by the parties.

15.      Pursuant to Paragraph 7 of the Recording Agreement, Defendant was required to "render a statement of accrued royalties earned by [Plaintiff]" within sixty (60) days of each preceding calendar quarter and to simultaneously make all payments of the royalties due to Plaintiff.  Ex. A.

16.     Defendant was required to make royalty payments for any "Record" which is defined as "[a]ny device now or hereafter known used for the reproduction of sound by electrical, mechanical, magnetic or other means."  *Id*.

17.     Paragraph 13(b) of the Recording Agreement provides that "Artist hereby waives

any rights or claims which he may have in and to the name and appellation "ORPHEUS" and hereby acknowledges that the said name was created by [Defendant] and that he shall only have the right to associate himself with the said name so long as this Agreement remains in full force and effect." *Id*.

18.     However, on October 8, 1967, the parties amended this provision regarding which parties have the rights to the name "ORPHEUS".

19.     The October 8, 1967 Rider Agreement ("The 1967 Rider Agreement") amended the parties' positions regarding ownership of the band name "ORPHEUS".  The 1967 Rider Agreement is attached hereto as **Exhibit C**.

20.     The Agreement expressly provides that Defendant, "or its designees, shall relinquish any and all rights to the name "ORPHEUS" after a period of three (3) years shall have elapsed from the date upon which the [Recording Agreement], and all option, periods, extensions and modifications thereof, shall have terminated."   Pursuant to the 1967 Rider Agreement, Defendant maintained control of the name "ORPHEUS" **solely** for the purpose of sales of records produced "during the term thereof."  *Id*. (emphasis added).

21.     The Rider was duly signed by the parties.  The 1967 Rider Agreement is valid and enforceable. *Id*.

22.     In approximately 2017, in an attempt to claim rights to the name "ORPHEUS", Defendant produced a 1970 Rider Agreement (the "1970 Rider Agreement") that purportedly relinquished the naming rights to "ORPHEUS" back to Defendant.  However, this document is a forgery.  A copy of the purported 1970 Rider Agreement is attached hereto as **Exhibit D**.

23.     The purported 1970 Rider Agreement states that "[t]he Rider to said Agreement dated October 8, 1967, is hereby annulled and henceforth shall be deemed null and void and of

no force or effect." *Id*.

24. This 1970 Rider purportedly amended Paragraph 13(b) of the Recording Agreement and gave Defendant the right to replace and substitute member of the band "ORPHEUS" at any time as Defendant saw fit and proper provided that Artist consented to such replacement with Plaintiff agreeing to not unreasonably withhold his consent. *Id*.

25. However, Plaintiff did not sign this 1970 Rider Agreement. Lay and expert comparison of the signatures of Plaintiff Bruce Arnold from the 1970 Agreement compared to his other signatures on other Agreements establishes he did not sign this 1970 Rider. Therefore, the 1967 Rider Agreement is the binding document and establishes the right and title to the name "ORPHEUS" remains with Plaintiff.

26. Defendant had previously acknowledged Plaintiff's rights to the name "ORPHEUS" in correspondence dated August 28, 1995. (**Exhibit E**: August 28, 1995 Letter).

27. Plaintiff only discovered this forgery on or about November 15, 2021. **Exhibit F**: Email.

**The Songwriter Agreements**

28. Additionally, Plaintiff and Defendant were parties to numerous Songwriter Agreements for songs written and composed by Plaintiff. At the time the parties entered into these Songwriter Agreements, Plaintiff assigned his copyright interest to Defendant as the Publisher of the songs. A copy of a sample Songwriter Agreement is attached hereto as **Exhibit G.**

29. A list of the musical compositions that have Songwriter Agreements is attached hereto as **Exhibit H**.

30. Defendant, as Publisher, was required to pay royalties for each of the musical

compositions.  See Exhibit G: Sample Songwriter Agreement at § 3.  The royalties include payments to Plaintiff of "[f]ifty (50%) percent of any and all net sums actually received by the Publisher from the mechanical rights, electrical transcription and reproducing rights, motion picture synchronization and television rights, and all other rights (excepting public performing rights) therein, including the use thereof in song lyric folios, magazines or other special editions sold by licensees of the Publisher in the United States and Canada."  *Id*. § 3(c).

31.    Defendant was also required to pay "[f]ifty (50%) percent of any and all net sums actually received by the Publisher from sales and uses of the musical composition in countries outside of the United States and Canada."  *Id*. § 3(d).

32.    All public performance royalties were to be paid by the "performing rights society" (i.e., ASCAP, BMI, SESAC) with which the Plaintiff (as writer) is affiliated with. *Id*. § 3(f).

33.    Defendant was required to account for the royalties by providing "within sixty (60) days after each June 30 and December 31 of each year, [to] prepare and furnish statements to [Plaintiff, to be accompanied] by a check or checks in payment of any and all sums shown to be due thereby." *Id*. § 4.

34.    The Songwriter Agreements also gave Plaintiff the following audit rights:

> Composer may appoint a certified public accountant to examine the books and records of Publisher [Defendant] but solely with reference to the musical composition.  Such examinations may be made by Composer [Plaintiff] during business hours upon ten (10) days notice to Publisher…. *Id. *§ 8.

**Improper Creation of Competing Derivative Works**

35.    Defendant has created derivative works that are copies of the songs written by Plaintiff and others.

36.    Defendant's practice is to create new works, re-titling them with different names, and releasing those recordings without any credit to Plaintiff and other songwriters.

37.     Plaintiff is aware of at least five instances where Defendant has created improper and unfair derivative works without crediting Plaintiff and paying royalties to Plaintiff despite the fact that the songs are identical, or substantially similar, derivative works of the original songs. A list of song titles which have been improperly re-created and issued without credit to Plaintiff is included in **Exhibit I**.

38.     Plaintiff is the songwriter and composer of the ORPHEUS song "The Dream". Defendant re-titled and registered with BMI (Work ID #3973714) a song titled "Echo Of The Night", also titled "Echo In The Night" or "Echoes In the Night" and credited to Alan Lorber as the sole songwriter.  This new song is a copy of Plaintiff's original work.

39.     Plaintiff is a songwriter and composer of the ORPHEUS song "Borneo".  Defendant re-titled and registered with BMI (Work ID #33087010) a song titled "Banjo Jack" with Jack McKenes listed as the sole songwriter and artist.  This new song is a copy of Plaintiff's original work.

40.     Defendant has also re-recorded and re-released numerous other performances featuring Plaintiff and has failed to account for these performances as required pursuant to the Recording Agreement.  A copy of the ORPHEUS recordings which have been re-titled and/or erroneously credited by Defendants are included as **Exhibit J**.

41.     Defendant has also re-released numerous ORPHEUS performances and recordings and failed to account for Plaintiff's performances on these re-releases.

**Failure to Account and Denial of Audit Rights**

42.     As far back as 1969, members of ORPHEUS complained to Defendant that Defendant was failing to properly account for royalties earned for the members of ORPHEUS.

43.     On or about January 18, 2022, Plaintiff sent Defendant a request to inspect and

audit the books of Defendant related to both the Recording Agreement and Songwriter Agreements.  A copy of the letter and request to inspect and audit the books of Defendants is attached hereto as **Exhibit K**: Letter dated January 18, 2022.  Defendant did not respond to this Letter.

44.     Defendant has failed to account and pay royalties owed to Plaintiff and failed to provide the quarterly statements required by the Agreements.  Instead, Defendant has improperly used the name ORPHEUS for its benefit and improperly kept royalties owed to Plaintiff.

45.     Defendant has refused to allow Plaintiff to inspect the books and conduct an audit, as he is allowed to do by contract and by law.

46.     On or about August 3, 2021, Plaintiff sent a Notice of Termination, pursuant to 17 U.S.C. § 304(c), 37 C.F.R. § 210.10, serving Plaintiff's notice of intention to terminate the rights to the copyrights of certain songs of which Plaintiff has rights as a songwriter.  (Ex. L: Copyright Termination Letter).  The list of songs covered by the Copyright Termination Letter appear on Schedule A to Exhibit M.

### COUNT I
*Breach of the Recording Agreement*

47.     Plaintiff repeats and re-alleges each of the foregoing paragraphs as if fully set forth herein.

48.     Plaintiff and Defendant entered into and executed valid and enforceable contracts, the Recording Agreement and the 1967 Rider Agreement.

49.     Plaintiff has fully performed his obligations under these contracts.

50.     In violation of the terms of the Recording Agreement, and despite due demand from Plaintiff, Defendant has failed and refused to pay sums jointly due and owing to Plaintiff thereunder in connection with the commercial exploitation of the ORPHEUS recordings and

compositions.

51.     Defendant's breach of the Recording Agreement is continuing to this very day, and constitutes ongoing violations with respect to all of the foregoing.

52.     By reason of the foregoing and other acts not presently known by Plaintiff, Defendant has knowingly and materially breached its contractual obligations to Plaintiff under the Recording Agreement.

53.     Defendant's material breach of the Recording Agreement is the legal cause of substantial damage to Plaintiff for which Plaintiff seeks monetary damages in an amount to be determined at the time of trial, and after Defendant provides a proper accounting.

**COUNT II**
***Breach of the Songwriter Agreements***

54.     Plaintiff repeats and re-alleges each of the foregoing paragraphs as if fully set forth herein.

55.     Plaintiff and Defendant entered into and executed numerous valid and enforceable contracts, the Songwriter Agreements.

56.     Plaintiff has fully performed his obligations under these contracts.

57.     In violation of the terms of the Songwriter Agreement, and despite due demand from Plaintiff, Defendant has failed and refused to pay sums jointly due and owing to Plaintiff thereunder in connection with the commercial exploitation of the ORPHEUS recordings and compositions.

58.     Defendant has further breached the Songwriter Agreements by refusing to grant Plaintiff the right to audit the books and records of Defendant.

59.     Defendant's breach of the Songwriter Agreements is continuing to this very day, and constitutes ongoing violations with respect to all of the foregoing.

60.     By reason of the foregoing and other acts not presently known by Plaintiff, Defendant has knowingly and materially breached its contractual obligations to Plaintiff under the Songwriter Agreements.

61.     Defendant's material breach of the Songwriter Agreements is the legal cause of substantial damage to Plaintiff for which Plaintiff seeks monetary damages in an amount to be determined at the time of trial, and after Defendant provides a proper accounting.

**COUNT III**
***Breach of the 1967 Rider Agreement***

62.     Plaintiff repeats and re-alleges each of the foregoing paragraphs as if fully set forth herein.

63.     Plaintiff and Defendant entered into and executed the valid and enforceable contract identified as the 1967 Rider Agreement.

64.     Plaintiff has fully performed his obligations under these contracts.

65.     The 1967 Rider Agreement gave Plaintiff the rights to the name ORPHEUS for all means other than the sale of records related to the original Recording Agreement during the original one year term of the Recording Agreement.

66.     Specifically, pursuant to the 1967 Rider Agreement, Defendant only maintained control of the name ORPHEUS solely for the purpose of sales of records produced "during the term thereof."

67.     Unbeknownst to Plaintiff, Defendant registered the name ORPHEUS with the United States Patent and Trademark Office ("USPTO") under IOC Class 009 for goods and service related to the sale of prerecorded phonographic recordings.

68.     Defendant has breached the 1967 Rider Agreement by utilizing the name "ORPHEUS" for touring, sales of records, licensing, merchandising and other improper

exploitation of rights to the name "ORPHEUS" which do not belong to Defendant.

69.    Such violations are outside of the terms of the 1967 Rider Agreement and constitute a breach of the 1967 Rider Agreement which continue to this very day.

70.    On or about November 15, 2021, Defendant sent email communications representing that the 1967 Rider was deemed null and void pursuant to the 1970 Rider and for the first time sent a copy of this purported 1970 Rider to Plaintiff.

71.    The 1970 Rider was sent to the United States Patent and Trademark Office ("USPTO") in 2017 as part of Defendant's USPTO Trademark Renewal Registration for the name "ORPHEUS".

72.    Plaintiff keeps meticulous records of his agreements and had never seen a copy of the 1970 Rider until he received this email on November 15, 2021.

73.    Instead of complying with the terms of the 1967 Rider Agreement, Defendant has produced a forged 1970 document, the 1970 Rider Agreement, which purports to give Defendant rights to the name "ORPHEUS".  Plaintiff did not sign the 1970 Agreement and his signature is forged.  The 1970 Rider Agreement is not a valid or enforceable document.

74.    By reason of the foregoing and other acts not presently known by Plaintiff, Defendant has knowingly and materially breached its contractual obligations to Plaintiff under the 1967 Rider Agreement.

75.    Defendant's material breach of the 1967 Rider Agreement is the legal cause of substantial damage to Plaintiff for which Plaintiff seeks monetary damages in an amount to be determined at the time of trial, and after Defendant provides a proper accounting.

**COUNT IV**
*Unfair Competition*

76.    Plaintiff repeats and re-alleges each of the foregoing paragraphs as if fully set forth

herein.

77.    Defendant and its agents have violated unfair competition laws by acting in bad faith misappropriation of the labors and expenditures of Plaintiff.

78.    Plaintiff owns the common law trademark to the name ORPHEUS and has rights to the songs at issue in this matter which have been misappropriated by Defendant in order for Defendant to gain an unfair advantage over Plaintiff's rights in the name ORPHEUS and the songs at issue.

79.    Defendant has engaged in unlawful, unfair and unscrupulous business practices. Defendant systematically and knowingly breached its contractual obligations with Plaintiff and others, and upon information and belief intentionally created false documents, failed to account, prevented audits, improperly created derivative works without crediting Plaintiff and others, and illegally profited from the work and labor of Plaintiff and others.

80.    Defendant has made representations of its creation of songs that were originally created by Plaintiff and others.  The representations were known to be false when made, and were made deliberately to pay Plaintiff less than he was entitled.  This activity affected consumers generally and untold members of the public at large, including not only the artists, music producers, and other royalty participants, but also their families, heirs, and beneficiaries.

81.    Defendant has unlawfully competed with Plaintiff by creating derivative musical compositions and sound recordings and failing to credit or compensate Plaintiff for the profits generated from these derivative musical compositions and sound recordings.

82.    Defendant's actions amount to a broad scheme to avoid paying Plaintiff the money and royalties he is owed.

83.    Defendant has withheld monies that belong to Plaintiff causing substantial

economic harm.   In doing so, Defendant knowingly breached its contractual obligations with Plaintiff through significantly unpaid royalties.

84.     The gravity of Defendant's misconduct outweighs any possible economic justification for such conduct—of which there is none.

85.     The harm to Plaintiff and the general public arising from Defendant's deceptive and unlawful practices outweighs the utility, if any, of those practices.

86.     The conduct described herein is ongoing, continues to this date, and constitutes unfair business acts and practices within the meaning of New York law.

87.     Plaintiff is entitled to an Order enjoining Defendant from continuing to account in the unlawful manner in which Defendant has in the past and continues to account for said monies.

88.     Plaintiff is entitled to restitution for quantifiable sums it had an ownership interest in and which Defendant unlawfully or unfairly failed to account for and pay to Plaintiff, dating back to the inception of the wrongdoing.

89.     As a direct and proximate result of Defendants' unlawful actions, Plaintiff has suffered and will continue to suffer irreparable injury and is entitled to injunctive relief and monetary damages in an amount to be determined at trial.

**COUNT V**
*Unjust Enrichment*

90.     Plaintiff restates and re-alleges the foregoing paragraphs as if fully set forth herein.

91.     If this Court does not award judgment against Defendants and in favor of Plaintiff for breach of contract, Plaintiff is entitled to damages under the theory of unjust enrichment.

92.     Plaintiff conferred a benefit on Defendant by writing and performing musical compositions and sound recordings to be exploited by Defendant with strict requirements as to payments for any exploitation of those musical compositions and sound recordings.

93.     Defendant has been enriched by exploiting these musical compositions and sound recordings without just compensation and royalties.

94.     Furthermore, Defendant has unlawfully competed with Plaintiff by creating derivative musical compositions and sound recordings and failing to credit or compensation Plaintiff.

95.     It is against equity and good conscience to permit Defendant to retain all amounts in which it was enriched by virtue of its unlawful actions.

96.     Defendant has accepted and retained the benefit of receiving the musical compositions and sound recordings without paying for its value and using the information for its own benefit.

97.     Plaintiff has suffered and will continue to suffer damages in an amount to be proven at trial, for which Defendant is liable, in association with Defendant's unjust enrichment.

## COUNT VI
### Breach of the Implied Covenant of Good Faith and Fair Dealing

98.     Plaintiff restates and re-alleges the foregoing paragraphs as if fully set forth herein.

99.     Plaintiff and Defendant have valid and enforceable agreements: The Recording Agreement and the numerous Songwriter Agreements.  Plaintiff has fully performed all of his obligations under the Agreements.

100.    Defendant, by and through its conduct and actions described in the Complaint, including without limitation, systematically and knowingly breaching its contractual obligations with Plaintiff and others, intentionally and fraudulently creating false documents, failing to account, preventing audits, improperly creating derivative works without crediting Plaintiff and others, and illegally profiting from the work and labor of Plaintiff and others.  Such actions frustrated the purpose of the Agreements.

14

101.    Defendant's actions in wrongfully withholding the benefits of the Agreements from Plaintiff and frustrating the purpose of the Agreements is the legal cause of substantial damage to Plaintiff for which Plaintiff seeks monetary damages in an amount to be determined at the time of trial.

## COUNT VII
### Common Law Trademark Infringement

102.    Plaintiff restates and re-alleges the foregoing paragraphs as if fully set forth herein.

103.    Pursuant to the 1967 Rider Agreement, Defendant only maintained control of the name ORPHEUS solely for the purpose of sales of records produced "during the term thereof."

104.    Since that time, Plaintiff has continuously operated as a musician with the band name "ORPHEUS" since 1969.  Plaintiff has used the name in commerce across the United States since 1969.

105.    Defendant acknowledged Plaintiff's rights to the name "ORPHEUS" in correspondence dated August 28, 1995.  (Exhibit E: August 28, 1995 Letter).

106.    Defendant never informed Plaintiff he could not use the name "ORPHEUS"

107.    However, Defendant misrepresented his intentions with the respect to the name "ORPHEUS" by going behind Plaintiff's back and registering a federal trademark for the name "ORPHEUS" when, pursuant to the Recording Agreement and the 1967 Rider Agreement, Defendant no longer maintained any rights with respect to the name Orpheus.  (**Exhibit L**: USPTO Filing).

108.    It was not until November 2021, when Plaintiff first became aware that Defendant had made claims to the name ORPHEUS.

## COUNT VIII
### Declaratory Judgment

109.    Plaintiff restates and re-alleges the foregoing paragraphs as if fully set forth herein.

110.    Plaintiff seeks a declaration that Defendant is obligated to pay Plaintiff all royalties owed from the Recording Agreement and the Songwriter Agreements.

111.    Plaintiff seeks a declaratory judgment that Plaintiff is the rightful owner the band name "ORPHEUS" for all music related purposes in the United States, including the sale of recordings and other merchandising and live music touring.

112.    Plaintiff seeks a Declaration that the Copyright Termination letter is valid and acts as a copyright termination for the Exhibit B songs at issue.

113.    By reason of the foregoing, there is a present controversy between Plaintiff and Defendant for which a declaratory judgment should be entered.

<strong>PRAYER FOR RELIEF</strong>

WHEREFORE, Plaintiff prays for judgment against Defendant as follows:

(1)    Compensatory damages, the exact amount of which to be determined at the time of trial;

(2)    An Order and Judgment declaring that the Agreements require Defendant to account pay Plaintiff for under the Recording Agreement and the Songwriter Agreements at issue;

(3)    An Order and Judgment that Plaintiff is the rightful owner of the band name "ORPHEUS" for all music related purposes;

(4)    A amount to be determined at trial, including, but not limited to, restitution from the date of the inception of this wrongdoing;

(5)    An order requiring Defendant to submit to an accounting so that all gains, sales, profits, and advantages derived by Defendant from each of its acts may be determined;

(6)     An award of actual and reasonable attorneys' fees and costs for services rendered

to Plaintiff;

(7)     An award of pre- and post-judgment interest;

(8)     Plaintiff be awarded trial by jury on all issues triable by jury; and

(9)     Such other and further relief as the Court deems just and proper.


Dated: May 14, 2022                    Respectfully submitted,


                                       By: */s/  Joshua D. Wilson*
                                       Joshua D. Wilson
                                       **GORDON REES SCULLY MANSUKHANI, LLP**
                                       One Battery Park Plaza, 28th Floor
                                       New York, NY 10004
                                       Telephone: 973-459-2532
                                       Fax: 212-269-5505

                                       *Counsel for Plaintiff Bruce Arnold*

## <u>VERIFICATION</u>

Bruce Arnold, being duly sworn, deposes and says:

I am the Plaintiff and a party to the Agreements that are subject to the Complaint.   I have read the foregoing Verified Complaint, know the contents thereof, and state the allegations are true and correct.  I base this Verification on my own knowledge, except as to matters therein stated to be alleged upon information and belief, and as to those matters, I believe them to be true and correct.  The grounds of my knowledge, information, and belief are derived from my personal involvement in the events underlying this litigation, and general investigation of the facts and circumstances described in the Verified Complaint.

Dated: May 22, 2022

_____

Bruce Arnold